## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NORTH AMERICA PHOTON
INFOTECH, LTD.,

                        Plaintiff,

    v.

ACQUIA, INC.,

                        Defendant.

Civil Action. No. 1:22-cv-12052 (FDS)

**DEFENDANT ACQUIA, INC.'S
REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## INTRODUCTION

Putting aside the hubbub of Plaintiff's Responses to Defendant's Statement of

Undisputed Material Facts and Plaintiff's Statement of Additional Facts [ECF No. 165]

("Photon's Rule 56.1 Statement"), the opposition to this summary judgment motion to rests on

the proposition that the Court should disregard the plain language and hypertexts contained in the

parties' Business Partner Referral Agreement and infer non-existent terms that require payment

on renewals.  Plaintiff North America Photon Infotech, Ltd. ("Photon") asks the Court to

interpret the following language as requiring that Photon receive 15% of all Acquia product sales

in perpetuity to a customer referred by Photon:

> **6.  REFERRAL FEES.**  For each Qualified Lead that purchases Acquia Products.[sic]
> Acquia will pay to Partner the applicable referral fee ("Referral Fee") set forth in the
> Referral Fee Terms located here:
> https://partners.acquia.com/sites/default/files/library/attachment/acquia_partner_rewards_
> 2015.pdf
>
> For the avoidance of doubt, in order for Photon to receive the source, co-sell and bonus
> Referral Fees totaling 15% as set forth *in the link above,* [Photon] must meet the
> following criteria:
> -  Make introductions of [Acquia, Inc.] to key stakeholders
> -  Help to set up meetings (in person or over the phone)
> -  Provide light qualification information — Budget, Authority, Need and Timeline

(Declaration of Molly Shenberger In Support of Defendant Acquia, Inc.'s Motion for Summary Judgment ("Shenberger S.J. Decl.") Ex. A ¶ 6).  Of course, that language says nothing about follow-on business and certainly doesn't promise referral fees on all renewals.

Moreover, Photon argues that the Court should not consider the terms in the referenced hyperlinks because Photon doesn't remember one of the terms in a hyperlinked document, Photon was never provided a hard copy and Photon can't access the hyperlinked document today, eight years later.  Not only is that wrong under Massachusetts law, but also the terms of the hyperlinked document are instructive in that they define the Referral Fees as due on individual sales: "Partner identifies *a lead,* qualifies the *opportunity* and co-sells for a 15% Reward." (Shenberger S.J. Decl. Ex. C at Acquia000657 (emphasis added)).  Read together with paragraph 6, the "for the avoidance of doubt" clause clarifies Photon's duties to obtain Referral Fees, but nowhere does it provide that if Photon identifies a lead and co-sells it, Photon is entitled to 15% on all renewals and subsequent business as Photon argues in this case.

In addition, Photon asks the Court to narrowly interpret the following language in the Business Partner Referral Agreement:

> Program Terms are subject to change/and or discontinuance by Acquia upon thirty (30) days[sic] notice to Partner via the Acquia Business Partner Portal.  Acquia reserves the right to determine Program requirements, guidelines and criteria, and Partner's compliance with the same.

(Shenberger S.J. Decl. Ex. A ¶ 1).  There is no dispute that Defendant Acquia, Inc. ("Acquia") sought to change the Program Terms in 2018 through a document titled "Partner Program & Partner Rewards July 2018" (Shenberger S.J. Decl. Ex. G ("2018 Program Terms")) and no dispute that Photon had notice of that document.  Photon argues, however, that the Court should hold that the 2018 Program Terms impermissibly sought to change the hyperlinked document referenced Business Partner Referral Agreement paragraph 6 and not only the Program Terms

2

identified by a hyperlink in the introductory paragraph. (Shenberger S.J. Decl. Ex. A ("https//www.aquia.com/sites/default/files/collateral/20150147-ds-partner-prog-at-a-glance-0360.pdf", a copy of which is attached to the Shenberger S.J. Decl. as Ex. B). Nothing on the face of the Business Partner Referral Agreement or either of the hyperlinked documents limits how Acquia can change the Partnership Rewards program. Indeed, Photon's interpretation would require Acquia to get assent from each participant in the Partnership Rewards program, which would deprive Acquia of its rights to determine the Program requirements, guidelines and criteria. The Court should hold that the 2018 Program Terms were effective as to Photon.

Finally, Photon asks the Court to also ignore parts of the following language from the Business Partner Rewards Agreement:

> **2. APPOINTMENT AND AUTHORITY.** Subject to the terms of this Agreement, Acquia hereby appoints Partner a non-exclusive Business Partner at the Preferred partner level *provided that Partner achieves Acquia certification for six (6) Partner personnel by December 31, 2015* and provided that Partner achieves Acquia certification at the then current requirement for the 2016 calendar year. *Acquia reserves the right, in its sole discretion, to downgrade Partner's partner level if Partner fails to satisfy the certification requirements set forth above.* Furthermore, if Partner fails to complete the Deal Registration Form and provide Assistance to Acquia with regard to obtaining News America Marketing as an Acquia client by the later of October 31, 2015 or the date News America Marketing decides to utilize Acquia, then Acquia may downgrade Partner's partner level during the Initial Term. *Acquia also reserves the right, in its sole discretion, to upgrade Partner to a higher partner level.* All changes to a partner level will be communicated to Partner. Any Leads registered by Partner or any Qualified Leads converted to Customer after such notification date will be calculated at the new partner level.

(Shenberger S.J. Decl. Ex A ¶ 2 (emphasis added)). While Photon admits that it did not meet the certification targets set forth in the requirement that it stay a Preferred partner, it contends that Acquia was prohibited from downgrading because Acquia had discretion not to do so and purportedly Photon never received notice of its downgrade. Presumably Photon has no dispute that Acquia had the explicit right in its discretion to upgrade Photon back to Preferred partner in

2019.  Accordingly, the Court should hold that Acquia had the right to downgrade Photon prior to 2018 and did so.

## **ARGUMENT**

I.    THERE ARE NO MATERIAL ISSUES OF FACT AS TO THE APPLICABLE TERMS

A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where a party "fail[s] to carry her burden as to essential elements of her case; summary judgment [is] appropriate."  *Moody v. Bos. & Maine Corp.*, 921 F.2d 1, 5 (1st Cir. 1990).

As set forth in our opening brief, the parties' Business Partner Referral Agreement incorporates the Program Terms and the 2015 Partner Rewards document by reference. (Defendant Acquia, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment Under Federal Rule of Civil Procedure 56 [ECF No. 159] ("Acquia S.J. Memo") at 2-3, 9-10).[1] In addition, Acquia amended the Business Partner Referral Agreement through distribution of the 2018 Program Terms of which Photon had actual notice as demonstrated by a copy in its files. (Acquia S.J. Memo at 10).  As Judge Hillman explained in *Infinity Fluids, Corp. v. Gen. Dynanics Land Sys., Inc.,* incorporation by reference is commonplace in commercial contracts and, even if a link is inoperable, explicit instructions on where to find the referenced language is sufficient to put a party on notice that it is bound by the terms in the document incorporated by

---

[1]    All terms defined in the Acquia MSJ Memo are incorporated by reference herein excepting "2018 Partner Rewards."  The Declaration of Molly Shenberger in Support of Defendant Acquia's Motion for Summary Judgment [ECF No. 159] ("Shenberger S.J. Decl.") introduced "Acquia Partner Program & Partner Rewards – July 2018" as "Exhibit G" and defined it as the "2018 Program Terms".  (Shenberger S.J. Decl. 3 ¶ 8).  The Acquia S.J. Memo defined the same document as "2018 Partner Rewards." (Acquia S.J. Memo at 4 ¶11).  For clarity and consistent with the evidence introduced by Ms. Shenberger, this memorandum will refer to the document as the 2018 Program Terms.  Acquia apologizes to the Court for using inconsistent defined terms in its summary judgment papers.

reference.  2013 WL 3158094 *4-5 (D. Mass. June 19, 2013).  *See also Artuso v. Vertex Pharm., Inc.* 637 F.3d 1, 7 (1st Cir. 2011) ("Incorporation by reference is a common tool in the drafting of contracts.").

A.    The Business Partner Referral Agreement Incorporated Terms By Reference

Photon admits, as it must, that the Business Partner Referral Agreement incorporated by reference two documents, identified by hyperlinks.  Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts and Plaintiff's Statement of Additional Facts [ECF No. 165] ("Photon Rule 56.1 Statement") at 2-3 (Business Partner Referral Agreement incorporated by reference documents with hyperlinks "ds-partner-prog-at-a-glance-0360.pdf" and "acquia_partner_rewards_2015.pdf.").  Photon nevertheless quibbles as to whether Exhibits B and C to the Shenberger S.J. Decl. [ECF Nos. 158-2 and 158-3, respectively] are in fact the documents incorporated by reference in Business Partner Referral Agreement.  (Plaintiff North America Photon Infotech, Ltd.'s Opposition To Defendant Acquia, Inc.'s Motion for Summary Judgment [ECF No. 162] ("S.J. Opp. Memo") at 7).  Yet Photon offers nothing to disprove that Shenberger S.J. Decl. Exs. B and C were incorporated by reference by the Business Partner Referral Agreement or that they were fake or forged.

Instead, Photon makes much of the fact that the hyperlinks embedded in the Business Partner Referral Agreement do not *currently* work and that Acquia did not provide Photon with hard copies of the hyperlinked documents.  (Photon Rule 56.1 Statement at 4-5 (responding to Statement of Undisputed Fact No. 4)).  That misses the point: the issue is whether Photon was aware that Business Partner Referral Agreement incorporated by reference the documents and whether Photon could access them in 2015, when the parties signed the Business Partner Referral Agreement.  *Infinity Fluids, Corp.,* 2013 WL 3158094 *4-5.   Contemporaneous email traffic

demonstrates that Photon was aware of the hyperlinks and signed the Business Partner Referral Agreement anyway and Photon does not contend otherwise.  (Shenberger S.J. Decl. Exs D & E; Photon Rule 56.1 Statement at 7 (responding to Statement of Material Fact No. 6)).[2]

Indeed, Photon does not dispute that it signed the Business Partner Referral Agreement twelve hours *after receiving the instructions on how to download the 2015 Partner Rewards* document, but nevertheless contends that it was unable to download or access that document based only on cites to the Photon Rule 56.1 Statement response Nos. 4 and 5.  (Photon Rule 56.1 Statement at 7-8 (responding to Statement of Material Fact No. 6)).  A careful reading of Photon's Responses to Acquia's Statement of Material Undisputed Fact Nos. 4 and 5 reflects that nowhere does Photon establish that it tried and failed to follow the instructions Acquia provided to it to obtain a copy of the 2015 Partner Rewards document.  Nor does Photon's incorrect legal argument that the 2015 Partner Rewards document is irrelevant "where the [Business Partner Referral Agreement] provides all material terms regarding commissions" negate the fact that the cited language itself clarifies terms in 2015 Partner Rewards document.  (Photon Rule 56.1 Statement at 7-8 (responding to Statement of Material Fact No. 6)).  The hyperlinks are not contractual surplusage and the Court should interpret the Business Partner Referral Agreement to give meaning to all terms.  *Powershare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 16 (1st Cir. 2010) ("an interpretation which gives effect to all the terms of a contract is preferable to one that harps on isolated provisions, heedless of context" *quoting Blackie v. Maine,* 73 F.3d 716, 722 (1st Cir. 1996)).  In any event, such legal arguments do not establish materials issues of fact.  *Skinner,*

---

[2]      Nothing in Ms. Shenberger's careful deposition testimony (Photon 56.1 Statement at 3-6, 30-34), is inconsistent with the Shenberger S.J. Decl., which identifies and authenticates the Program Terms, the 2015 Partner Rewards document and the 2018 Program Terms and thus does not establish a material issue of fact. *See Pena v. Honeywell Int'l, Inc.,* 923 F.3d 18, 30 (1st Cir. 2019) (non-contradictory affidavits should not establish material issue of fact).

*Inc. v. Li*, No. CV 20-11402-MPK, 2023 WL 4409827 * 3 (D. Mass. July 7, 2023) ('[s]peculation' and 'argumentation' are not enough at this stage" (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 57 (1st Cir. 2011) (opposition to summary judgment that is "nothing more than speculation or argumentation" does not establish material issue of fact)).

      B.     <u>A Failure To Remember Does Not Raise Material Issues of Fact</u>

A party's professed failure to remember receiving a document does not establish a material issue of fact. *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 56 (1st Cir. 1999) ("Daly's deposition testimony that she did not remember receiving the Plan at best raises one possibility, among others, that a copy was never sent to her. That is not enough."). *See also Oahn Nguyen Chung v. StudentCity.com, Inc.,* No. CIV.A. 10-10943-RWZ, 2013 WL 504757, at *2 n.4 (D. Mass. Feb. 12, 2013) (student's failure to remember checking an on-line box accepting terms and conditions does not establish a genuine issue of fact in the face of "testimony by affidavit that plaintiff checked an online box accepting terms when payment was made agreeing to terms and conditions, which was not disputed"). Likewise, a party may not assert that if he had understood a contractual term "he never would have signed it." *Bear, Stearns & Co. v. Sharon*, 550 F. Supp. 2d 174, 177 (D. Mass. 2008) (emphasis added) (denying preliminary injunction). *See also Schofield v. French*, 36 F. Supp. 2d 481, 486 (D.R.I. 1999), aff'd, 215 F.3d 1312 (1st Cir. 2000) (party's testimony that "he would not have signed it if he understood its terms" does not invalidate the contract).

Nevertheless, Photon contends that it is not bound by the 2015 Partner Rewards terms because its CFO, Sanjiv Lochan, declared that he reviewed the Business Partner Referral Agreement "and any documents that would have been accessible via the hyperlinks embedded in

the BRPA" and "do[es] not recall seeing any term that placed a cap on the amount of commissions that Photon would be entitled to . . . ," referencing a $150,000 cap on referral fees in the 2015 Partner Rewards terms.  (Declaration of Sanjiv Lochan in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment [ECF No. 164] ("Lochan Decl.")  ¶¶ 4-5).  Mr. Lochan further asserts he "never would have approved" and "Photon never would have signed" the Business Partner Referral Agreement "had it placed a cap on the amount of Photon's commissions." *Id.*  Mr. Lochan does state precisely what materials he reviewed or whether he was aware of Acquia's instructions to Mr. Iyer on how to access the 2015 Partner Rewards document.  (Shenberger S.J. Decl. ¶ 4 & Ex. D).  Moreover, Mr. Lochan's recollection nine years later as to a single term in a hyperlinked document is not determinative of whether the document attached to the Shenberger S.J. Decl. as Exhibit C is in fact a copy of the document referenced as "acquia_partner_rewards_2015.pdf."

C.      Photon Did Not Establish That It Was Entitled To 15% Commissions On All Deals

The Business Partner Referral Agreement provides that Photon was initially to be Preferred partner, entitled to earn Referral Fees totaling 15% as set forth in the 2015 Partner Rewards document, subject to Photon achieving Acquia certification of at least six personnel by December 31, 2015, and meeting the certification requirements for the 2016 calendar year. (Shenberger S.J. Decl. Ex. A ¶ 2).  Likewise, the Business Partner Referral Agreement expressly provides Acquia the right to downgrade or upgrade Photon's partnership level.  (Shenberger S.J. Decl. Ex. A  ¶¶ 1, 2).  Acquia downgraded Photon in 2016 to a "Foundation" (formerly known as Community) partner after it failed to meet the personnel certification requirements (Shenberger S.J. Decl. ¶ 7) which is reflected in Acquia's internal documents in connection with the Mars

opportunity. (Pinta Decl. Ex. G (internal Aquia document reflecting Photon as Foundation level partner)).

Photon does not dispute that it failed to meet the requisite Acquia certification of six personnel by the deadline or thereafter. (Photon Rule 56.1 Response at 13-14 (responding to Statement of Undisputed Fact No. 13)). Nevertheless, Photon argues that the language in Section 6 of the Business Partner Referral Agreement requires that Acquia pay Photon 15% fees indefinitely. (S.J. Opp. Memo at 17-18 (noting Acquia had proposed language expressly limiting the 15% on new subscriptions for books for year 1 only)). The final version of Section 6 does not include the limiting language, but instead references the hyperlink to the 2015 Partner Rewards. (Shenberger S.J. Decl. Ex. A). According to Acquia's Molly Shenberger, "we added the verbiage regarding Referral fees. It's the same offer as was emailed but stated more eloquently.") (Pinta Decl. Ex E at Acquia001244). Accordingly, Acquia believed that the incorporation by reference of the 2015 Partner Rewards maintained the one-year limitation rather than abandoned it.

Nowhere does Photon contend that it was unaware that Acquia downgraded it to Foundation level partner in 2016. To the contrary, Photon argues that it did not receive notice of its downgrade (Photon Rule 56.1 Statement at 13-14 (responding to Statement of Undisputed Fact No. 13)), but its evidence does not support that proposition. Instead, the testimony of Michael Levine that Acquia "bent its rules" to give Photon Preferred status at the outset does not negate Acquia's right to downgrade Photon when Photon did not achieve six certifications of its personnel or that Photon received notice of that downgrade. (*Id.* at 14). Nor does the conclusory testimony of Photon's corporate witness, Mr. Ramakrishnan, establish that Photon received no notice of its downgrade, especially since he admitted that he "did not know the details," he

assumed that Photon maintained Preferred status and "he did not got back into [his] records and look[] to see who was certified and what events transpired eight years back." (*Id.*)[3]

Acquia exercised its discretion to elevate Photon to a Preferred partner after Photon helped Acquia close a $345 thousand Mars opportunity closed November 2018. (Pinta Decl. Exs. G, H (internal Acquia documents reflecting Photon as Foundation level partner for Mars initial sale and Preferred level partner for Mars upgrade in 2019) & S at 2 (indicating Mars opportunity closed on November 7, 2018)). Given Acquia demoted Photon in 2016 and elevated Photon back to Preferred level after Acquia closed the initial Mars opportunity in 2019, the rest of Photon's evidence does not establish material issues of fact. Ms. Shenberger's confirmation that Photon was paid 15% on the News America Deal in Q1 2016 is consistent with Photon's Preferred status at the end of 2015. (Pinta Decl. Ex. I at P000077). Likewise, Mr. Currier's 2019 confirmations that Photon was a Preferred level partner does not create a material issue of fact as to Photon's status in 2018 when the Mars deal closed. (Pinta Decl. Exs. I & Q). Mr. Levine's December 18, 2019 email confirmed that Photon was aware that its "tier" was under discussion for 2018 and asking for help in finding undefined 2017 deals, admits that "he may have misunderstood the ask from his finance dept." (Pinta Decl. Ex. I at P000077). Photon introduced no evidence that it registered or closed any Preferred partner deals with Acquia in 2016, 2017, or

---

[3]     Mr. Ramakrishnan's testimony that "we did not receive notification" seems confused and is entitled to no weight since he admitted that he undertook no investigation prior to appearing for his deposition. (Defendant Acquia Inc.'s Memorandum In Support of Motion to Compel [ECF No 56] at 11-12 & Declaration of Irwin B. Schwartz In Support of Motion to Compel [ECF No. 57] at 2 ¶ 7& Ex. E [ECF No. 57-5] at ECF pages 10-16 (admitting to no preparation other than meetings with counsel and review of complaint and summary document)). Acquia should not be prejudiced by Mr. Ramakrishnan's poor preparation and his testimony should be excluded. *C.f., Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.,* 201 F.R.D. 33, 37-39 (D. Mass. 2001) (producing an unprepared witness is tantamount to failing to appear at a deposition).

2018 and Mr. Levine's email assertion that Photon was a Preferred partner in those years is entitled to no weight.[4]

>        D.    The 2018 Program Terms Did Not Require Photon's Consent

As set forth in our opening brief, the Agreement expressly provides that the "Program Terms are subject to change and/or discontinuance by Acquia upon thirty (30) days' notice to [Photon] via Acquia's Business Partner Portal." (Acquia S.J. Memo at 11).  In opposition, Photon does not dispute that Acquia had the right to amend the Program Terms (Photon Rule 56.1 Statement at 10 (responding to Statement of Undisputed Fact No. 10)).  Nor does it dispute – or even address - that it had notice of the revised 2018 Program Terms, as Photon produced a copy of that document from its own files at the close of discovery. (Schwartz S.J. Decl. ¶ 6, Ex. D at P025678–P025697).[5]

Instead, Photon attempts to limit the scope of Acquia's amendment rights by arguing that the 2018 Program Terms required Photon's written consent because they involve the same subject matter as the 2015 Program Rewards document.  (Opp. S.J. Memo at 12).  Nothing on the face of the Business Partner Agreement limits the scope of Acquia's changes to the Program Terms or requires Photon's consent to changes to the Program Terms.  (Shenberger S.J. Decl. Ex.

---

[4]        Photon does not contend that the Business Partner Referral Agreement and its documents incorporated by reference are ambiguous and accordingly Mr. Balasubramanian's conclusory testimony about a discussion between himself and Acquia's Timothy Bertrand "if we won Mars" (Photon Response to Rule 56.1 at 8 (responding to Statement of Undisputed Fact No. 6)) is parol evidence and does not vary the terms of the Business Partner Referral Agreement or its referenced documents.  *ITT Corp. v. LTX Corp.,* 926 F.2d 1258, 1261–62 (1st Cir. 1991) ("[u]nder Massachusetts law, parol evidence may not be admitted to contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists.").  Indeed, Photon first registered the Mars deal in August 2018, three years after the Business Partner Referral Agreement was signed.  (Shenberger S.J. Decl. ¶ 2, 11). In any event, Mr. Balasubramanian's testimony is consistent with the fact that Acquia restored Photon to Preferred partner after the Mars deal closed and paid Photon 15% for the Mars upgrade.  (Pinta Decl. Exh. H).
[5]        While irrelevant given its actual notice of the 2018 Program Terms, Photon's denial of receiving Acquia's notification email rests on Mr. Levine saying he doesn't recall in 2024 receiving the email in 2018.  (Photon Rule 56.1 Statement at 10 (responding to Statement of Undisputed Material Fact No. 11)).  A failure to recall receipt of an email does not establish a material issue of fact. *I.V. Servs. of Am., Inc.*, 182 F.3d at 55-56.

A).  Moreover, Photon strenuously objects to the limitation imposed in the 2018 Program Terms

on paying rewards calculated only by initial term of a Qualified Lead deal and argues that

limitation is ineffective because the Business Partner Referral Agreement requires all

amendments and waivers to be in writing and signed by the parties.  (Photon Rule 56.1 Statement

at 19-20 (responding to Statement of Undisputed Fact No. 15)).  As Photon admits, however, the

2015 Partner Rewards document does not grant Photon rights to referral fees on renewal deals.

(*Id.* at 20-21). Instead, the 2015 Partner Rewards terms specifically explain that the right to 15%

Rewards is dependent on "identify[ing] a lead, qualif[ing] the opportunity and co-sell[ing]. . . ."

(Shenberger S.J. Decl. Ex. B at Acquia000657).  Therefore the 2018 Program Terms' limitation

on rewards to only initial sales is not inconsistent with the 2015 Partner Rewards on that point.[6]

## II.    CONCLUSORY ASSERTIONS ABOUT BAYER DO NOT RAISE MATERIAL ISSUES

Under the Business Partner Referral Agreement, "Acquia reserves the right to determine

Program requirements, guidelines, and criteria, and [Photon]'s compliance with the same."

(Shenberger S.J. Decl. Ex. A ¶ 1).  As set forth in our opening brief, only Qualified Leads properly

registered and accepted by Acquia were eligible for referral fees under the Agreement. (Acquia

S.J. Memo at 13-14). Acquia reserved the right to reject a proposed Lead if Acquia was already

aware of the potential sales opportunity or otherwise had a pre-existing relationship with the

customer. (Shenberger S.J. Decl. ¶ 6, Ex. A ¶ 5, Ex. C at Acquia000659–60). To qualify for referral

fees on any Acquia's sales to Bayer, Photon must therefore have registered a Bayer opportunity

---

[6]    Photon's assertion that language in the Influence Fees section of the Business Partner Referral Agreement
establishes that Photon is entitled to Referral Fees on renewal deals infers the opposite.  (Photon Rule 56.1
Statement at 19 (responding to Statement of Undisputed Fact No. 15)). There is no evidence that Photon sought or
was entitled to Influence Fees with respect to any Acquia opportunity or renewal.  The fact, however, that Section 7
of the Business Partner Referral Agreement expressly provides for renewal fees, which term exists nowhere in
Section 6 or the 2015 Partner Rewards document addressing Referral Fees indicates that the parties did not intend to
award Referral Fees on renewals.

through the Deal Registration Portal and received Acquia approval. (Shenberger S.J. Decl. Ex. A ¶ 5, Ex. C at Acquia000659–60).

The record reflects that Acquia, within its discretion, correctly determined that Photon did introduce the Bayer opportunity to Acquia, Photon did not properly register the Bayer deal and, while Photon admittedly assisted in the Bayer sale, Photon was entitled to no referral fees on Bayer. (Shenberger S.J. Decl. ¶ 12 and Ex. H).  In response, Photon introduced nothing but conclusory testimony that is entitled to no weight.

A.    <u>Photon Does Not Dispute That Acquia Had A Pre-Existing Relationship With Bayer and Another Partner Introduced The Bayer Opportunity to Acquia</u>

Our moving papers established that Photon had no right to referral fees for deals where Acquia was already aware of the potential sales opportunity. (Acquia S.J. Memo at 15; Shenberger S.J. Decl. ¶¶ 6, 12, Ex. A ¶ 5, Ex. C at Acquia000659-60, Ex. G at Acquia000667).  Indeed, Acquia's sales tracking system confirmed that Acquia was introduced to the Bayer opportunity by Possible, LLC, another participant in Acquia's Referral Program.  (Shenberger Decl. Ex. H).  Bayer was Acquia's existing customer—and Acquia was already aware of the Bayer opportunity—before Photon's claimed introduction of Acquia to Bayer and Photon does not dispute that fact. (Photon's Rule 56.1 Responses at 21-22 (responding to Statement of Undisputed Fact No. 16)).  Moreover, as Photon's Mr. Stone admitted in an email to Acquia, Photon attempted to register the Bayer deal <u>in 2019</u>.  (Pinta Decl. Ex K at Photon000575 ("Here's a list of referrals to Acquia that we've tracked – the first 7 from 2018 and the remaining 14 [including Bayer] from 2019."))  The Bayer deal closed in April 2018 (Shenberger S.J. Decl. Ex H) and thus there is no material issue of fact that Photon failed to timely register the Bayer opportunity, which was indisputably introduced by Possible, LLC, nor does Photon demonstrate that Acquia abused its discretion in determining that

Photon failed to comply with the applicable Business Partner Referral Agreement requirements, guidelines or criteria.

B.     Conclusory Assertions Do Not Establish Material Issues Of Fact

In the First Circuit "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990). *See also DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (summary judgment may be appropriate where non-moving party rests on conclusory allegations) (quoting *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 12 (1st Cir.1994)). While Photon generally contends that it attempted to register the Bayer opportunity, strikingly absent is any evidence as to when it sought to do so. Photon offers no contemporaneous communications with Acquia or Bayer to establish that Photon was responsible for introducing Acquia to Bayer sufficient to make Bayer a Qualified Lead. Instead, Photon seeks to establish an issue of fact by conclusory assertions that the Acquia Deal Registration system was "flaky." (Photon rule 56.1 Statement at 11-12 (responding to Statement of Undisputed Fact No. 12)). Mr. Ramakrishnan, who admitted that he did nothing to prepare to testify as Photon's corporate witness, also offered only general conclusions that Acquia's deal registration system "was like broken." (*Id.* at 12). These statements are not evidence that Photon sought to properly registered Bayer as a Qualified Lead prior to 2018 when Acquia closed the Bayer opportunity to receive referral rewards.

Moreover, Acquia expressly refused to award referral fees on opportunities that were the subject of public tenders or requests for proposal. (Shenberger Decl. Ex. C at Acquia000658). Photon does not dispute that the Bayer opportunity was the subject of an RFP, which Acquia

14

attributed to another participation in the Partner Rewards Program called Possible, LLP. (Shenberger Decl. Ex. H).  As Acquia determined in its contemporaneous analysis, Photon was one of numerous participants in the Partner Rewards Program that assisted in the Bayer deal. (*Id.*).  That does not establish that Photon is entitled to referral fees for an opportunity that it did not register until after the fact, if at all, and was contained in an RFP, which is also disabling under the 2015 Partner Rewards document.

## CONCLUSION

For the foregoing reasons, Acquia respectfully requests that the Court enter summary judgment against the complaint in this proceeding.

Dated:  November 20, 2024

> Respectfully Submitted,
>
> Acquia Inc.,
> By its attorney,
>
> /s/ Irwin B. Schwartz
> Irwin B. Schwartz (BBO# 548763)
> ischwartz@blaschwartz.com
> BLA Schwartz, PC
> One University Ave., Suite 302B
> Westwood, Massachusetts 02090
> Phone:  781-636-5000
> Fax:     781-636-5090

## CERTIFICATE OF SERVICE

I, Irwin B. Schwartz, as attorney for Defendant Acquia, Inc., hereby certify that on November 20, 2024, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

> */S/ Irwin Schwartz*
> Irwin B. Schwartz