# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
)
**NORTH AMERICA PHOTON**     )
**INFOTECH, LTD.,**     )
     )
    **Plaintiff,**     )
     )     **Civil Action No.**
    **v.**     )     **22-12052-FDS**
     )
**ACQUIA, INC.,**     )
     )
    **Defendant.**     )
_____)

## MEMORANDUM AND ORDER ON
## PLAINTIFF'S MOTION FOR LIMITED RECONSIDERATION

**SAYLOR, J.**

Plaintiff North America Photon Infotech, Ltd., brought this action seeking monetary relief against defendant Acquia, Inc., for contract-related claims. After the Court granted defendant's motion for summary judgment in part and denied it in part, plaintiff filed a motion for reconsideration. The motion for reconsideration concerns the Court's statement that "influence fees," a defined term in the parties' contract, "are not at issue in this case." Summ. J. Mem. & Order 22.

Plaintiff contends that the terms "influence fees" and "co-selling fees" are used interchangeably in the contract, and that because "influence fees" could in some cases be earned on deal renewals, there is a triable issue of fact as to whether plaintiff is entitled to such fees on renewals.

For the reasons that follow, the motion will be denied.

## I.    **Background**

The factual background of the case is set out fully in the Court's August 8, 2025, Memorandum and Order on Defendant's Motion for Summary Judgment.

On August 29, 2025, plaintiff moved for limited reconsideration of that memorandum and order, contending that the court erred in concluding that "influence fees . . . are not at issue in this case."

## II.    **Standard of Review**

Motions for reconsideration are extraordinary remedies that should be granted sparingly. *Villanueva-Mendez v. Nieves-Vazquez*, 360 F. Supp. 2d 320, 324 (D.P.R. 2005); 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed. 2025) ("[B]ecause of the narrow purposes for which they are intended, . . . motions [for reconsideration] typically are denied.").  When faced with such motions, a court "must balance the need for finality against its duty to render just decisions."  *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000).

In order to accommodate these competing interests, motions for reconsideration should be granted only upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension."  *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 81-82 (1st Cir. 2008).  A motion for reconsideration is not a vehicle for a party to "repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier."  *Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990); *see also Davis*, 89 F. Supp. 2d at 147; *Villanueva-Mendez*, 360 F. Supp. 2d at 324.  Nor is it a forum to highlight a point of disagreement between a litigant and the court or to vent dissatisfaction with the court's

reasoning or decision. *Davis*, 89 F. Supp. 2d at 149; *Waye v. First Citizen's National Bank*, 846 F. Supp. 310, 314 n.3 (M.D. Pa. 1994).

## III.    <u>Analysis</u>

Plaintiff contends that "the Court did not understand or apprehend that co-selling and influencing are the same." (ECF No. 185 at 3). For that reason, plaintiff argues, the Court erred in holding that it was not entitled to any referral fees on renewal deals.

That argument, however, is not supported by the language of the contract. To begin, "Referral Fees" and "Influence Fees" are separate defined terms in the BPRA. (ECF No. 158, Ex. A § 6 ("For each Qualified Lead that purchases Acquia Products, Acquia will pay to [Photon] the applicable referral fee ("Referral Fee") set forth in the Referral Fee Terms . . . ."); *id.* § 7 ("[Photon] may receive influence fees as set forth in the Program Terms ("Influence Fees") pursuant to the Influence Fee Terms, outlined in the Program Terms.")). Referral fees can total 15 percent of the value of a deal, while influence fees are capped at 10 percent. (*Id.*). And the terms appear to encompass different stages of the dealmaking process. Referral fees are earned by "mak[ing] introductions," "help[ing] to set up meetings," and "provid[ing] light qualification information"—all seemingly sales or marketing activities—while influence fees are earned by "assist[ing] Acquia in the sale of the Acquia Products," with "assist[ing]" defined as "participat[ing] in RFP's, demonstrations, [and] proof of concepts in conjunction with Acquia"—all activities that seemingly come somewhat later in the dealmaking process, after initial introductions have been made and meetings set up. (*Id.*).

Furthermore, while plaintiff did sometimes "use[] the words" co-selling and influencing "interchangeably in its prior filings," those references nearly all concerned the co-selling component of § 6 referral fees. (ECF No. 185 at 3). With one exception, all the filings plaintiff cites refer to a 5 percent commission for "co-selling/influencing," and therefore refer to a

3

component of § 6 referral fees and not to § 7 influence fees, which could total up to 10 percent. (*See* ECF No. 162 at 1 (discussing "a 5% commission for co-selling/influencing the deal"); *id.* at 12 (noting that, under the Referral Fee Terms, "[plaintiff] received commissions of . . . 5% for co-selling/influencing"); ECF No. 165 at 17 (noting that "a partner, regardless of partner level, received commissions of . . . 5% for co-selling/influencing")).  Only once did plaintiff use the term "influence/co-selling fees" to refer to § 7 influence fees.  (*See* ECF 165 at 29 ("Section 7 of the BPRA sets forth the criteria for Photon to receive influence/co-selling fees . . . .").

But even if plaintiff had consistently referred to both § 6 and § 7 of the BPRA with the term "co-selling/influencing fees," it cannot rewrite the plain language of the contract based on its own understanding.  The Court must construe the contract "as a whole, so as to give reasonable effect to each of its provisions." *James B. Nutter & Co. v. Estate of Murphy*, 478 Mass. 664, 669 (2018) (internal quotation omitted).  The proper way to do so here is to apply the common-sense notion that different terms defined separately in separate sections of the contract do not in fact refer to the same thing.  *Cf. Boazova v. Safety Ins. Co.*, 78 Mass. App. Ct. 438, 443 n.7 (2010) (recognizing that each item in a list in a contract must "be given its own ordinary and separate meaning" so as not to "render one or the other superfluous").

Plaintiff makes much of the fact that defendant's Rule 30(b)(6) designee, Molly Shenberger, testified that defendant understood co-selling and influence fees to be synonymous. (ECF No. 189, Ex. A at 5).  But a party's understanding cannot alter the unambiguous terms of a contract.  *See Church of the Holy Spirit v. Heinrich*, 491 Mass. 464, 467 (2023) (recognizing that the language of a contract, "plainly and intelligibly stated, is the best possible evidence of the intent and meaning of those who are bound by the contract" (citation modified)).  Again, the BPRA defined referral fees and influence fees separately in separate sections of the contract, and

it provided different limits for the maximum percentage plaintiff could receive of each. That clear intent to define referral and influences fees as two different terms cannot be overridden by the testimony of defendant's corporate representative. *See ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir. 1991) ("Under Massachusetts law, parol evidence may not be admitted to contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists.").

It is also noteworthy that plaintiff's arguments earlier in this case substantially undercut its argument here. Since this case began nearly three years ago, plaintiff has alleged that it is entitled to 15 percent of the value of the deals defendant signed with certain clients. (Compl. ¶ 13 ("The compensation set forth in the Referral Agreement was up to 15% of the license fees paid to [defendant] by each client that [plaintiff] referred."); *id.* ¶ 22 (claiming, on a deal where plaintiff received nothing from defendant, that "[t]he amount due and owed to [plaintiff] on this opportunity valued at $1.31 million is $196,500"—that is, 15 percent of the deal's value)). That claim to 15 percent is presumably based on § 6 of the BPRA, which provided that plaintiff could earn up to 15 percent of a deal's value as referral fees. If plaintiff was alleging that it was entitled to § 7 influence fees as well as the "co-selling/influencing" component of § 6 referral fees, plaintiff presumably would have sought recovery of 25 percent of the value of the contracts defendant signed with Bayer and Mars. The fact that plaintiff did not claim a right to 25 percent of that value in the complaint likewise supports the conclusion that plaintiff's theory of recovery throughout this case has been based on § 6 referral fees rather than § 7 influence fees.[1]

In summary, as the Court held in its August 8, 2025 order, the terms of the BPRA do not entitle plaintiff to § 6 referral fees on renewals. Therefore, the Court declines to reconsider its

---

[1] It is also true that until this motion for reconsideration, plaintiff has not argued that is it entitled to the 10 percent influence fee under § 7 of the BPRA in addition to the 15 percent referral fee under § 6.

conclusion that, as a matter of law, plaintiff is not entitled to referral fees on deal renewals under the BPRA.

**IV.**     **Conclusion**

For the foregoing reasons, plaintiff's motion for reconsideration is DENIED.

**So Ordered.**


<u>/s/  F. Dennis Saylor IV</u>

Dated:  September 24, 2025          F. Dennis Saylor IV
                                    United States District Judge